Robert M. Marx, Esq.
1019 Fort Salonga Road, Suite 10-134
Northport, NY 11768
Email: Robertmarx@rmmarxlaw.com
Tel: 917-375-1909

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**In re:**                                            Case No. 25-41684-ess

Empire NJ Consulting LLC,
d/b/a/ Empire Cannabis Clubs                    Chapter:11

Debtor(s)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### EMERGENCY APPLICATION IN SUPPORT OF AN ORDER TO SHOW CAUSE

I am counsel for Empire NJ Consulting LLC, in the above action and am fully familiar with the facts as set forth in this application.

I respectfully submit this application is in support of Debtor's Emergency Order to Show Cause that seeks relief based on the willful violation of the automatic stay by 424 Broadway, LLC; 833 Manhattan Avenue, LLC; BNN Fulton Flushing LLC; (collectively the "Landlords"); Marshal Robert Renzulli ("Marshal"), and Attorney at Law, Andrew R. Gottesman ("Counsel" for Landlords) and Rosenberg & Estis, PC (Counsel's "Firm")[1]; and including a declaration that the Landlords and Marshal violated the automatic stay generated by the filing of this proceeding, return of possession, restoration of the subject premises to the pre-eviction status, compensatory and punitive damages and against a finding that Counsel, the Firm, and the Marshal are in contempt of the court.

---

[1] The Counsel and Firm represent the Landlord in both the bankruptcy and eviction proceedings.

1

## PRELIMINARY STATEMENT

On April 7, 2025, within two hours of receiving notice that Empire NJ Consulting LLC ("Empire NJ" or "Debtor") filed for Chapter 11 bankruptcy protection, 424 Broadway, LLC and the Marshal evicted the Debtor from their leased space at 424 Broadway, New York, NY. They did not move in this Court to lift the automatic stay before evicting the Debtor. Instead, according to Landlord's counsel, "[I]n consultation with each other and as explained below, the Landlord and Marshal resolved that this Third Bankruptcy Case could not preclude ECC's eviction from the Premises because the Lease was clearly not property of the Debtor's estate."[2]

The Landlords continued to violate the automatic stay by evicting the Debtor from 833 Manhattan Avenue, Brooklyn, NY and from 446 Fulton Street, Brooklyn, NY.

The power of the automatic stay is clearly stated in 11 U.S.C.A. § 362 and is unequivocally confirmed by case law: actions taken in violation of the automatic stay are void and without legal effect, relief from the automatic stay requires notice and a hearing, and creditor's good faith belief in its right to property is not relevant to determine whether its violation of stay in taking possession of that property is in nature of "willful" violation of automatic stay.

An automatic stay was in place when the Debtors filed the Petition in this case on April 7, 2025. This was confirmed by Hon. Elizabeth Stong in her April 21st order (ECF # 17, page 4).

Landlords offer two primary justifications for carrying out the evictions.

The first is that the Hon. Michael Wiles lifted a stay in a previously filed bankruptcy case in the Southern District of New York, no. 25-10308-mew. This is irrelevant.  The automatic stay that was in effect at the time of the evictions is because of the instant case, and can only be lifted by an order from Judge Stong.

---

[2] ECF #15, page 4 and ECF 25, par.8).  It should be noted that the Debtor was named as a defendant in the eviction proceeding, New York County Civil Court index no. LT-308204-24/NY

The second is that the Landlords can ignore the automatic stay because they determined, in consultation with Marshal Renzulli, that the subject leases are not part of the Debtor's bankruptcy estate. This also fails. The determination of whether the Debtor properly brought this case can only be made after notice and a hearing in this Court about the underlying issues: venue, multiple entities using the same "DBA," and the relationship between the Debtor and the leased premises. Regardless of this Court's ultimate determination, Landlords, Counsel, and Marshall violated the automatic stay that was in effect upon the commencement of this case because they chose to act without permission from this Court.

It is troubling that the marshal—an officer with extensive experience conducting evictions and full knowledge of the stay's protections—chose to move forward with the evictions.

Even more troubling is that the second and third evictions occurred while this Court was actively considering arguments about the application of the automatic stay. It is not plausible that the Landlord and his counsel did not discuss the evictions. So, either the attorney sanctioned the evictions, or, at the very least, did not advise his client to honor the automatic stay by moving in this Court to vacate the stay rather than deciding the issue for themselves.[3]

While any party might attempt to excuse such conduct as a mistake, a momentary lapse of judgment, or confusion in the heat of the moment, that explanation collapses under the weight of the facts. This was not a single instance. This did not happen twice. This happened three separate times—each involving the same marshal and the same counsel to the Landlords. These three evictions of the Debtor were undisputably knowing and willful violations of the automatic stay. To allow such repeated, knowing violations of the automatic stay to pass without consequence

---

[3] Landlord's counsel never moved to vacate the automatic stay.  Their filings concerned only the underlying issues.

would undermine the very foundation of bankruptcy protections and the Court's authority to enforce them.

The Debtor seeks emergency relief to prevent imminent and irreparable harm to its equitable interests in the leased property. These interests include substantial investments made in interior design, security equipment, custom signage, artwork, air handlers, and a greenhouse equipped with specialized lighting. These improvements are at serious risk of damage or destruction, which would impose significant costs to restore or replace. Additionally, the leasehold interests themselves possess considerable value and represent assets of the bankruptcy estate. Preservation of these interests is essential to maintaining the value of the estate for the benefit of creditors.

Although the Debtor as a pro se litigant has represented to this Court from the first day of filing the petition that the estate needed assistance with an automatic stay violation, it can be understood that this Court waited until the Debtor had proper Counsel in place to represent this issue. Now that the Debtor is represented by Counsel, the Debtor respectfully requests that this Court honor the automatic stay and restore the bankruptcy estate back to the position it was upon the filing of the petition, and grant all other relief sought.

## RELEVANT FACTS AND PROCEDURAL HISTORY

1.      The facts and relevant procedural history presented in this application are limited to those directly related to the violation of the automatic stay.

2.      Shortly after 9:00 a.m. on April 7, 2025. Empire NJ filed a Petition for Chapter 11 bankruptcy relief, and a pro se Order to Show Cause to stay the eviction at 424 Broadway, New York, NY.

3.      Petitioner gave notice to 424 Broadway LLC and the Marshal, and documents were uploaded to NYSCEF by 10:00AM.

4.      After "consulting with each other," the Landlord and Marshal determined that the subject lease was not part of the Debtor's bankruptcy estate.

5.      Landlords filed an opposition to the Order to Show Cause on April 15. The Debtor responded on April 16.

6.      At a hearing on April 16, Judge Stong determined that an automatic stay was in effect for Empire NJ based upon its bankruptcy filing. However, she expressed uncertainty regarding the specific creditors that were subject to the stay and directed Petitioner to submit further explanation and authority clarifying whether Petitioner may lawfully maintain two separate Chapter 11 filings simultaneously; and how and under what conditions the same DBA may properly be associated with both filings.

7.      In an Order dated April 16, Judge Stong confirmed that an automatic stay came into effect when the Debtor filed its petition in this bankruptcy case, and that the stay applied to property of the Debtor's estate. However, she denied the Order to Show Cause because the record did not show that the Debtor "has not established that the 424 Broadway Lease that is the subject of the OSC Application is the property of the Debtor's estate,"

8.      On April 30, the Debtor filed a response supporting its position that separate Chapter 11 filings by individual LLCs are permissible and often required, separate companies can use the same DBA, and the Eastern District a proper venue for this proceeding (ECF #20).

9.      On May 12, Landlord proceeded with the eviction on the Debtor from the Manhattan Avenue Club, and the Debtor filed a pending Emergency Application for an Order to Show Cause for relief that included the return of possession of the Debtor's Manhattan Avenue Club, and a Temporary Restraining Order to prevent further marketing of the Broadway club (ECF #22).

10.     Landlord filed opposition on May 14. (ECF #25).

11.     The court has not ruled on the May 12 Order to Show Cause.

12.     On July 11, Landlord proceeded with the eviction on the Debtor from the Fulton Street Club.

## ARGUMENT

13.     Under 11 U.S.C. § 362, the filing of a bankruptcy petition imposes an automatic stay that prohibits a creditor from acting against the debtor or property of the estate. Any actions taken in violation of the automatic stay are void and without legal effect.

14.     Creditors may not unilaterally decide whether the stay applies and, if there is any doubt, must seek clarification from the court before proceeding. "If there is any question that the automatic stay might apply, the prudent course is to seek relief from the stay before acting." _In re Johnson_, 548 B.R. 770, 788 (S.D. Ohio 2016). "A motion for stay relief is not a mere formality that may be ignored." _In re Brought_, 307 B.R. 399, 402 (Bankr. S.D.N.Y. 2004). "Uncertainty must be resolved through court adjudication, not unilateral action." _In re Brown_, 237 B.R. 316, 321 (Bankr. E.D.N.Y. 1999).

15.     Under 11 U.S.C.A. § 362(a)(3), (k), a creditor's good faith belief in its right to property "is not relevant to determination of whether its violation of stay in taking possession of, or exercising control over, that property is in nature of "willful" violation of automatic stay." _In re: Tasso Laskaraotos_, 605 B.R. 282. A willful violation of an automatic stay, of kind supporting an award of damages against the violator, "is any deliberate action taken by creditor in violation of the automatic stay, which the violator knows to be in existence." _Id_. The court held in _In re Madjid Ebadi_, 448 B.R.308, that under 11 U.S.C.A. § 362(k)(1), a mortgagee conducting a foreclosure sale of commercial property pursuant to prepetition foreclosure judgment, with knowledge that the named defendant had filed a bankruptcy case, was a was a willful violation of

automatic stay warranting award of actual damages, even if mortgagee believed that its conduct did not violate a stay.

16.    A dismissal of a bankruptcy case due to deficient filings has no bearing on the automatic stay that begins upon filing a bankruptcy petition. For example, in *Ebadi*, the court held that the dismissal of the debtor's case due to lack of compliance with Bankruptcy Code's filing requirements "did not affect determination that automatic stay was in place upon petition filing and in effect at the time creditor conducted foreclosure sale in violation of stay" and "that debtor's bankruptcy case was dismissed does not render automatic stay violation moot."

17.    The court also held in *Ebadi* that Mortgagee's conduct in proceeding with foreclosure sale under judgment that named Chapter 13 debtor as defendant, with knowledge of debtor's bankruptcy case, was a willful violation of automatic stay warranting award of actual damages, even if mortgagee believed that its conduct did not violate stay.

18.    Despite receiving clear notice of the Debtor's bankruptcy filing and the protections afforded by the automatic stay, the Landlord and Marshal nonetheless proceeded to evict the Debtor from 424 Broadway on April 7. This action was taken unilaterally, based solely on their own determination that the lease was not part of the bankruptcy estate—without seeking leave of this Court, as required under 11 U.S.C. § 362 and well-established case law.

19.    Their disregard for the automatic stay continued with the subsequent evictions of the Debtor from 833 Manhattan Avenue and 446 Fulton Street, both of which occurred while this Court was actively presiding over the case. These actions constitute willful violations of the automatic stay and warrant an award of damages.

20.    The law does not turn on either party's subjective feelings or interpretations. Debtor is entitled to protect its legal and equitable interests through the bankruptcy process and to propose

a plan of reorganization, and this Court is the sole entity given the responsibility for judicial and determinations of law.

## CONCLUSION

Even if this court ultimately determines that it was not proper for the Debtor to bring this proceeding in this court, or if this proceeding is dismissed for deficient filings, the relief Debtor seeks should be granted because the Landlords and Marshal, in consultation with Landlord's counsel,  violated the automatic stay by proceeding with the evictions solely based on their own determination that the leases were not part of the Debtor's bankruptcy estate.

Date: August 18, 2025

_____
Robert M. Marx, Esq.
1019 Fort Salonga Road, Suite 10-134
Northport, NY 11768
Email: Robertmarx@rmmarxlaw.com
Tel: 917-375-1909