ROBERT M. MARX, ATTORNEY AT LAW, P.C.

1019 Fort Salonga Road

Suite 10-134

Northport, New York 11768

Email: robertmarx@rmmarxlaw.com

Tel: (917) 375-1909

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| EMPIRE NJ CONSULTING LLC<br>d/b/a Empire Cannabis Clubs | |
| Debtor(s) | Case No. 25-41684 (ess) |

## <u>OPPOSITION TO CREDITORS' MOTION FOR SANCTIONS</u>

Empire NJ Consulting LLC, d/b/a/ Empire Cannabis Clubs ("Debtor"),

Jonathan Elfand ("Elfand"), and its counsel Robert M. Marx ("Marx"), oppose the

Motion for sanctions by 833 Manhattan Avenue LLC ("833 Manhattan"), BNN

Fulton Flushing Owner LLC ("Fulton Owner"), and 424 Broadway LLC ("424

Broadway," and collectively with Fulton Owner and 833 Manhattan, the

"Creditors") pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), Rules 1001-1(b)(iv), 1073-2(c), and 2090-2(e), of the

Local Bankruptcy Rules of the Eastern District of New York (the "Local Rules"), 11

U.S.C. §105(a) and 28 U.S.C. §1927 imposing sanctions and respectfully state as

follows

## <u>PRELIMINARY STATEMENT</u>

Debtor Empire NJ Consulting LLC ("ENJC") by and through counsel,

respectfully submits that the Creditor's' Motion for Sanctions is factually incorrect, legally unsupported, procedurally improper, and should be denied in full.

The motion is also fundamentally misdirected. Attorney Andrew R. Gottesman ("Gottesman") is attempting to repackage arguments that, under the Bankruptcy Code, should have been brought through (i) a motion to dismiss his clients as creditors, or (ii) a motion for relief from the automatic stay. Instead of moving before this Court *before acting*, as required, Gottesman conferred with the Creditors and Marshall Renzulli about whether to act against the Debtor's property, even though he had notice of the Debtor's Chapter 11 Petition. Then, despite imposition of the automatic stay upon filing the Petition, he recommended engaging in the self-help evictions.

This is clearly an attempt to thwart the Debtor's legitimate challenge to the Creditor's violation of the automatic stay for lack of any other avenue to change the outcome for the Creditors. To move for sanctions with its more stringent evidentiary standard, prior to moving for a motion for stay relief only requiring a preponderance of the evidence, is in itself a question into Creditor's intent with this motion. This unfounded bid for sanctions against the Debtor, its principal, and its counsel merely for asserting a legitimate challenge to the stay violation may be a case after *In re Parikh*, 508 B.R. 587 (Bankr. 2017) where the court left open the question as to whether there were facts that could establish that there was ill intent in filing the motion for sanctions. Granting this relief would set a precedent that creditors could evade mandatory procedures to  acquire stay-relief and then silence

a debtor from seeking redress. This "shoot first and don't ask questions later" tactic undermines the power of this Court under well-established requirement that a challenge to the automatic stay—for any reason, including perceived bad faith or an improper creditor—must be made by motion to the Bankruptcy Court, with proper notice and a hearing.

Gottesman's approach is contrary to Rule 9011, §§ 362 and 105, and basic bankruptcy procedure, especially considering he approved the Landlord's code violations. Equally improper is his attempt to obstruct the Debtor's ability to assert its rights by moving for sanctions against Marx for simply representing his client, especially because Marx's representation began well after most of the Debtor's challenged actions occurred.

The delays in filing schedules and obtaining counsel were caused by one unavoidable legal reality: an LLC debtor cannot proceed without counsel. The Debtor's inability to immediately hire counsel, due to financial strain and widespread cannabis-industry overbilling, made it impossible to file required documents until proper counsel could be secured. The extended timeframe was not the product of bad faith but the direct consequence of (1) the Debtor's financial conditions, (2) the structural requirement of counsel, and (3) the Court's own discretionary decision to permit the case to continue beyond the usual 15-day period for obtaining counsel.

The Creditors' motion for sanctions should be denied in its entirety because the bankruptcy was filed for a legitimate purpose, and bad faith is not

demonstrated in this case by asserting a claim that there was a violation of the automatic stay, the delay in acquiring counsel, or deficient filings until counsel was retained.

## RELEVANT FACTS

### The Debtor Has Taken action to Overcome the Financial Crisis Caused By the Government's Enforcement Actions

1.    The Debtor has a proven, successful business model. Its current financial crisis was caused by enforcement actions by New York State and New York City, that included warrantless seizures of products, exclusion of staff and forced closures, and interference with normal commercial operations. These actions are currently the subject of civil litigation in District Court, with potential damages in the millions.

2.    Prior to these actions, the Debtor's affiliated enterprises were stable, profitable, and fully capable of meeting rent obligations.

3.    To protect estate property from further unlawful intrusions, the Debtor has adjusted operating hours to avoid known enforcement windows, redesigned entry and membership protocols, and implement security and operational measures to limit forced-entry opportunities. Revenue was significantly reduced during this transition period.

4.    Now, operations are stabilized, and the Debtor is once again able to meet ongoing expenses and continue this viable operation.

## <u>History of Bankruptcy Filings by the Two Companies</u>

### Bankruptcy filings by Elfand Organization LLC, d/b/a Empire Cannabis Clubs

5.      This Court is very well aware of the history of this proceeding, and it will not be repeated here in the interest of brevity.  However, Debtor presents the following to correct the record presented by Creditors.

6.      In December 2024, Elfand Organization LLC, d/b/a/ Empire Cannabis Clubs ("Elfand Organization"), filed for Chapter 11 relief in the Southern District of New York in case number 24-12122-lgb.  The Debtor filed pro se because enforcement had crippled revenues and prevented retention of counsel. This case was dismissed on February 3, 2025 solely because the Debtor had not retained counsel—not for bad faith or other conduct.

7.      Upon renewed eviction efforts along with other financial constraints, Elfand Organization filed a second Chapter 11 proceeding under case number 25-10308-mew. The Debtor retained counsel specifically to oppose stay relief but was unable to secure counsel to represent the entire case at that time. The stay was lifted solely due to temporary inability to pay post petition rent, and not because the filing was improper.

8.      During meetings with their state court real-estate counsel, the Debtor learned that the leases that are the subject of this proceeding were executed by ENJC and had been incorrectly included as estate property in the SDNY proceeding.  Under color of law ENJC clearly had a possessory interest in these

locations or, at the very least, a potential possessory interest, as shown by their being listed as a defendant in the New York State Landlord Tenant Court action, and in the resulting eviction warrants.

9.      Once alerted to the State court listing of ENJC, Elfand determined that the company had been paying for the rental payments at said locations and determined that ENJC was actually the proper debtor for the leased properties listed as Creditors here.

10.     ENJC filed a Chapter 11 proceeding in the Eastern District because it was the closest bankruptcy court location to his state court attorney's office, and ENJC's main business location was its office at 833 Manhattan Avenue, Brooklyn.

## Bankruptcy filing by Empire NJ Consulting LLC, d/b/a Empire Cannabis Clubs

11.     On April 7, 2025, ENJC filed this bankruptcy proceeding, and immediately gave notice to the Landlord for the 424 Broadway location.

12.     This is the first and only filing by the Debtor, Empire NJ Consulting LLC. The filings in the Southern Districts were by Elfand Organization LLC.  While the d/b/a for both Elfand Organization and ENJC is Empire Cannabis Clubs, they are distinct entities. The Landlord Creditors continue to conflate this Debtor with a separate corporate entity from different litigation—multiple filings by different debtors are not sanctionable.

## Additional Clarifications of Creditor's Factual Assertions

13.     The  Debtor  challenges  all  assertions  that  presuppose  legal

conclusions or the propriety of actions by the parties, such as "this Third Bankruptcy Case could not preclude eviction because the Leases are not property of this Debtor's estate," "the eviction of 833 was lawful," and the "Supplemental Affirmation wrongfully accuses the Creditors..."

14.    The subject leases were entered into by Elfand under his personal company, Empire NJ Consulting, which was in operation since at least January 2022, over 18 months before ENJC was formed as an LLC.

15.    The tenant on the lease is Empire Cannabis Clubs, which is only the d/b/a of ENJC.

16.    Creditor's claim that the Debtor is relitigating SDNY or State-Court issues is false because there has been no ruling by any court about a stay violation involving this Debtor. ENJC has never filed in SDNY; the SDNY case involved a different entity.

17.    Creditor's "Imaginary Leverage" theory is unsupported by the record. The Debtor repeatedly informed the Court it sought adjudication, not a settlement.

18.    Creditor's assertion that Debtor provided "no evidence" is contrary to the filings, because Debtor provided extensive case law establishing:

- ENJC's possessory rights under state-court eviction filings;
- immediate attachment of the automatic stay;
- the legal definition of willful stay violations;
- that under New York's 2019 amendments and In re Payam, a warrant does not terminate rights until physical eviction.

19.    Creditor's argument that the leases were "terminated" contradicts

New York Law and this Court's Precedent. Under *In re Payam*, 642 B.R. 365 (Bankr. S.D.N.Y. Aug. 10, 2022), a tenant retains possessory rights until physically removed, not upon issuance of a warrant. No physical eviction occurred here until after the Chapter 11 petition was filed.

20.     Creditors misrepresent Judge Wiles' SDNY decision because his ruling only dealt with the Elfand Organization LLC, not ENJC. His ruling has no application here.

21.     The Debtor mentions for candor and clarity, that if the Court had not dismissed the petition in this case  the Debtor would have been able to present how the Monell claim in the S.D.N.Y. 1983 action had a relationship to this Debtor's Estate  and explain of its intent from the beginning of the litigation to enter as a party to the damages litigation with the associated business Elfand Organization LLC and others.

22.     Creditors repeated claims that ENJC has no property rights are contradicted by his own filings in state court, where the Landlord/Creditors listed ENJC as a defendant in the eviction proceedings. Possessory rights thus existed and became property of the estate.

## **ARGUMENT**

### A.     **The Landlord/Creditors were required to seek relief from the Court *Before* engaging in their evictions**

23.     The rules governing the automatic stay imposed by the filing of the bankruptcy Petition are clear:

    i. The stay arises the moment the petition is filed and binds all listed creditors, whether or not they have actual notice.

    ii. The stay remains in force until the case is dismissed, closed, discharge is granted or denied, or the Court grants affirmative stay relief.

    iii. A creditor's disagreement with its status does not exempt it from the stay; the stay applies unless and until the Court determines otherwise.

    iv. If a creditor disputes its status or the applicability of the stay, its sole recourse is to file a motion for relief, not to act unilaterally.

24.    In his motion, Gottesman never addressed these fundamental concepts of Bankruptcy Law, either through direct argument or relevant case law. Instead, he references them as frivolous arguments and merely repeats allegations previously made in opposition to the Debtor's motions addressing the stay violations, continuing to use incorrect arguments including that the Creditors were not creditors of this Debtor, the leases had been terminated in state-court eviction proceedings, and the Debtor did not exist when the leases were signed.

25.    None of these arguments alters the most basic and indisputable point of bankruptcy law: the automatic stay attaches immediately upon the filing of a petition and applies to all parties listed as creditors until the court vacates the automatic stay, no matter what the creditors believe about the validity of the stay.

26.    Gottesman's reliance on the statement from this Court that "the Debtor in this bankruptcy case has not established that the 424 Broadway Lease that is the subject of the OSC Application is the property of the [ENJC] Debtor's

estate," is also misplaced. While the Order denied the Debtor's Order to Show Cause, the Court's statement had to be tangential for it is again black letter law that until a motion for dismissal or relief is filed the Debtor has no need to supply evidence to establish proper creditors or estate property. This denial was not a substitute for a properly noticed motion and did not nullify the fact that once the bankruptcy petition was filed, the automatic stay applied by operation of law.

27.    Furthermore, Creditor's belief that the time allowing assumption had passed is again misplaced. Once the Creditors physically evicted the Debtor from his leased locations, its ability to assume the leases was negated, and tolled until the properties were returned to the estate.

28.    To be clear, the Creditors became proper creditors upon the filing of the petition. Under the Bankruptcy Code, any party listed in the petition with a claimed interest or claim against the estate is treated as a creditor unless and until the Court determines otherwise. In fact, the Creditors in each eviction proceeding had already identified ENJC as a party with a potential possessory interest in the leased properties. Case law previously submitted by the Debtor establishes that a party named in an eviction proceeding is presumed to hold a possessory interest sufficient to trigger protection under Chapter 11 and of the automatic stay.

29.    Consistent with this authority, the Debtor's inclusion of the properties at 833 Manhattan Avenue and 446 Fulton Street followed substantial research confirming that the leases had been obtained through ENJC and operated by its Managing Member. As soon as that due diligence was complete, and before any

eviction occurred, the Debtor properly listed these Creditors as creditors in this case.

30.     Thus, the Landlord's own state court eviction filings demonstrate that they believed the Debtor may have a claimed interest in the leased premises. As Debtor's previously presented caselaw clearly establishes, a party listed in an eviction filing has supposed property interests until the court can determine otherwise. If the Creditors genuinely believed that the Debtor's Petition was improper, that the possessory interest was invalid, or that the Debtor was acting in bad faith, the Bankruptcy Code required them to bring those concerns to this Court before taking action against estate property to obtain relief from the stay. Thus the accusations of frivolous filing is meritless.

## B.    Sanctions Are the Exception, Not the Rule, and the Creditors Have Not Met Their Burden Under Any Applicable Standard

31.     Courts have consistently held that sanctions are a rare and extraordinary remedy, imposed only where conduct is clearly abusive. *Palagonia v. Sachem Cent. Sch. Dist.*, 2010 WL 811301, at *2 (E.D.N.Y. Mar. 1, 2010)*; *Mone v. Commissioner*, 774 F.2d 570, 574 (2d Cir. 1985). Under 28 U.S.C. § 1927, sanctions require conduct that is entirely without merit and undertaken for an improper purpose, such as harassment or delay. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). The burden rests solely on the moving party. *Intelli-Check, Inc. v. Tricom Card Techs., Inc.*, 2005 WL 3533153, at *11 (E.D.N.Y. Dec. 22, 2005)*. The statutory phrase "unreasonably and vexatiously" sets a high threshold,

requiring conduct that is both unreasonable and intended to achieve an improper objective. *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70 (2d Cir. 2006). A claim remains "colorable" so long as it has any factual or legal support when viewed in light of the filer's reasonable beliefs. *In re Green*, 422 B.R. 469 (S.D.N.Y. 2010).

32.    To the extent the Creditors invoke Rule 9011, Local Bankruptcy Rules 1001-1(b), 1073-2(c), or 2090-2(e), or the Court's authority under 11 U.S.C. § 105(a), none provides any basis for sanctions here. Rule 9011 applies only to filings that lack evidentiary or legal support or are submitted for an improper purpose.

33.    As demonstrated throughout this Opposition—the Debtor's Petition had a clear, correctable, and colorable legal basis. Local Rule 1001-1(b) merely reflects the Court's inherent authority and requires bad faith, which is entirely absent. Local Rule 1073-2(c) concerns judge-shopping or manipulation of case assignments—conduct not alleged and irrelevant to this case. Local Rule 2090-2(e) governs attorney discipline, not debtor filings or conduct by a non-lawyer managing member. And § 105(a) authorizes sanctions only for willful abuse of the bankruptcy process, not where the Debtor's actions were directed toward preserving estate property and correcting a creditor-identification error. Taken together, the authorities cited by Gottesman do not remotely fit the facts of this case and underscore the impropriety of attempting to impose sanctions here. Although revenue was temporarily insufficient to cover obligations, Elfand has planned and actively implemented strategies to stabilize operations. Whatever the outcome of the District Court litigation, his business model once again is viable,

revenue-generating, and positioned for future success. In short, under every applicable standard—Rule 9011, local rules, inherent authority, § 105(a), and § 1927—the Creditors must establish bad faith, improper purpose, or vexatious conduct. They have not met that burden.

## C.    Sanctions cannot be used as a sword to subvert adjudication

34.    The Creditors waited months, through countless filings, hearings, and responses, before seeking sanctions. They did not file when Elfand filed pro se filings, when Marx filed the Emergency Order to Show Cause, when the schedules were submitted, after the September hearings, or after the stay-violation letters.

35.    Instead, the Creditors filed at the one moment when their motion would divert resources away from preparing for the stay hearing; exert maximum pressure on counsel by threatening personal financial liability; and preemptively subvert the stay-violation hearing. This is a strategy designed to interfere with the Debtor's right to prosecute stay-violation claims and to insulate the Creditor Landlords from judicial review of their own conduct

36.    Creditors basis for the sanctions are the very factual questions the Court must resolve at a motions hearing. The purpose of putting the sanction cart before the violation of the automatic stay horse is to chill the Debtor's advocacy, intimidate its attorney, and steer the proceedings away from the Creditor Landlords' own self-help eviction actions, actions taken without first seeking stay relief, without Court approval, and in direct conflict with the obligations imposed on creditors listed in the Petition.

37. Rule 9011 is not a shortcut to avoid § 362 analysis. It is not a shield for stay violators, and should not be transformed into a weapon of intimidation against opposing counsel.

38. The Court should deny the motion in its entirety and admonish counsel for weaponizing sanctions procedure in a manner inconsistent with the Bankruptcy Code and the integrity of these proceedings.

## D.    Sanctions Against Jonathan Elfand Are Not Warranted

39. To impose sanctions on Jonathan Elfand, the Court needs to find both (i) that the petition lacked a colorable legal basis, and (ii) that Elfand filed it in bad faith. The record, evaluated under the Second Circuit's bad faith filing framework, shows the opposite.

40. Gottesman's attack on Elfand's intent is an issue that should have been raised by motion prior to their self-approved evictions, and does not alter the fact that the request for sanctions is not founded in the actual record. While these matters may be proper subjects for inquiry before the Court, allegations concerning Efland's intent in filing the Petition—or that he "gamed the system" by delaying the filing of schedules or the retention of counsel are, absent notice and a hearing, nothing more than unsupported accusations.

## The Debtor Had a Colorable Legal Basis to File Because the LLC Was Named in the Eviction Papers

41. Under established law, a party named in eviction proceedings holds a presumptive possessory interest sufficient to justify a Chapter 11 filing. It is

undisputed that ENJC was listed in all three eviction petitions. Therefore, the filing was legally grounded because the Debtor LLC was expressly named in state-court eviction proceedings. This alone creates, at minimum, a colorable basis for filing.

42.     The Creditors' argument boils down to:

    i.     their belief that the Debtor could not properly file this proceeding and/or the subject leases were not part of the Debtor's Estate.

    ii.    Based solely on their beliefs, the automatic stay did not apply. Therefore, they did not have to move before this court to vacate the stay, and

    iii.   the Debtor should be sanctioned for questioning their reasoning

**The Petition Was Filed for a Proper Bankruptcy Purpose Under the Controlling Bad-Faith Framework**

43.     Jonathan Elfand filed to preserve multiple leasehold interests owned by the Debtor, halt pending evictions, reorganize operations and cash flow, protect employees, and stabilize the business pending civil-rights litigation challenging unconstitutional enforcement actions. These are core Chapter 11 purposes, not a demonstration of bad faith.

44.     Every one of the Debtor's filings occurred during a period of extraordinary financial disruption caused by enforcement actions by New York State and New York City that the Debtor is currently challenging in Federal District Court. Throughout this period, the Debtor acted in good faith to preserve estate property and stabilize operations.

45.     Although revenue was temporarily insufficient to cover obligations, Elfand has planned and actively implemented strategies to stabilize operations. Whatever the outcome of the District Court litigation, his business model once

again is viable, revenue-generating, and positioned for future success.

46.    In *In re Syndicom*, 268 B.R. at (Bankr. S.D.N.Y. 2001), Judge Bozeman cautioned that the doctrine of bad-faith filing must be used sparingly to avoid denying bankruptcy relief to debtors except in exceptional cases. Id. at 49. Consistent with *Setzer*, good faith requires only an honest intention, not perfect execution. In re *Setzer*, 47 B.R. 340, 344–45 (Bankr. S.D.N.Y. 1985). The totality of circumstances must reveal "substantial evidence" of bad faith before such a finding may be made. *Syndicom*, 268 B.R. at 53.

47.    Furthermore, filing on the eve of eviction does not indicate bad faith. As Judge Brozman expressly held, filing "on the eve of foreclosure or eviction does not, by itself, demonstrate bad faith." *Syndicom*, 268 B.R. at 47.

**Venue is proper**

48.    During discussions with a real estate attorney handling the landlord/tenant action, Elfand learned that the Creditors at issue were listed not in the SDNY filing where he initially believed they belonged, but as creditors of this Debtor, ENJC, because each Landlord had listed this LLC in state-court eviction filings. Once he discovered the error:

- he physically went to the E.D.N.Y. courthouse and attempted to file the petition the Friday before the scheduled eviction on 424 Broadway believing the clerk's window was open until five p.m. but, upon arrival, realized that the window closed at 3:30 pm.

- he began completing the petition but because the clerk's window was closing, he was told to return first thing Monday morning.

49.    He did exactly that. The filing therefore occurred only hours before

the eviction—not as part of a scheme, but because the clerk's office was closed and he needed time to complete the necessary documents.

50.    The remaining business locations were added to the creditor list shortly before eviction when they could have been listed at the time of filing because Elfand wanted to assure they were all proper creditors for this debtor in this instance.

**Delays were caused by Debtor's lack of Counsel**

51.    Elfand could not yet find counsel due to many attorneys demanding inflated retainers due to "green-rush" pricing;

    i.   Elfand was simultaneously engaged in multiple litigation matters across jurisdictions; and

   ii.   He took additional time to research and confirm that these Creditors were the correct creditors for this estate.

  iii.   These circumstances reflect financial strain and diligence, not bad faith.

52.    The delays in filing schedules and obtaining counsel were caused by one unavoidable legal reality: an LLC debtor cannot proceed without counsel. The Debtor's inability to immediately hire counsel, due to financial strain and widespread cannabis-industry overbilling, made it impossible to file required documents until proper counsel could be secured. The extended timeframe was not the product of bad faith but the direct consequence of (1) the Debtor's financial conditions, (2) the structural requirement of counsel, and (3) the Court's own discretionary decision to permit the case to continue beyond the usual 15-day period for obtaining counsel. The Debtor appreciated that accommodation, but it

became a contributing factor to the timeline the Creditors now criticize.

53.    Counsel's assertion of delay is baseless. The Debtor acted immediately to file the stay-violation motion on the same day, and prior to, the Creditors entering the 424 Broadway property, and was unable to proceed without counsel.

54.    In fact, Gottesman had the power to speed up this proceeding any time after April 7 simply by filing a motion to rule on the stay.  The Creditors waited months, through countless filings, hearings, and responses, before seeking sanctions. Gottesman waited until the stay-violation hearing was scheduled, after the Debtor finally had counsel, the issues had been fully briefed, and the Court was prepared to hear arguments on whether the Landlords violated § 362.

55.    Accordingly, there is no basis to impose sanctions against Jonathan Elfand. The filing had a clear and colorable legal basis, was undertaken with honest intent, and was driven by circumstances entirely consistent with legitimate Chapter 11 use.

## E.    Sanctions against debtor's counsel, Robert Marx, are not warranted under Rule 9011(b)(1)–(3)

56.    Rule 9011 requires that counsel (i) not file documents for an improper purpose, (ii) ensure legal arguments are warranted by existing law or a good-faith argument for modification, and (iii) make factual assertions that have or are likely to have evidentiary support after reasonable investigation.

57.    Marx satisfied all three requirements. There is no evidence—and certainly no clear showing—that any filing by Marx was made in bad faith, for an

improper motive, without adequate legal grounding, or without reasonable factual investigation.

**Marx did not file documents for an improper purpose**

58.    Marx entered the case on or around August 8, 2025. At that time, he immediately faced two urgent challenges. First, the Debtor was extremely behind on required post petition filings due to the Debtor's inability to acquire counsel. Second, the Landlord Creditors had taken actions that violated the automatic stay and seized estate property, creating ongoing harm, and leaving questions as to which creditors were part of the Bankruptcy estate pending a decision about the automatic stay violation. Finally, immediate action was needed to stabilize the case and address significant legal issues long before Marx had a full opportunity to review the Debtor's complex business model.

59.    Despite these constraints, within a few weeks of appearing in this proceeding, Marx filed to address the stay violations, responded to the Trustees filings, worked to understand and organize the record that included a unique business model involving multiple related entities and pre-petition enforcement actions, and filed schedules and statements.

60.    Marx has consistently provided an abundance of case law supporting Debtor's legal arguments.

**Marx's acted diligently, and the factual assertions he presented have, or are likely to have, evidentiary support after reasonable investigation**

61.    Marx acted diligently in the few weeks between his appearance and

the dismissal of this bankruptcy, despite multiple appearances and filings in this proceeding, the SDNY proceeding, and his ongoing commitments to his existing clients.

62.     He filed an Order to Show Cause within one week of appearing in this case and a supplemental motion two weeks later.  His follow up letters were intended to speed up the adjudication, not to delay it.

63.     The Landlord Creditors complain that Marx did not yet understand every aspect of the Debtor's business model that includes layered membership fees, affiliate structures with multiple entities, locations and functions, municipal and state enforcement actions impacting revenue, and pre-petition Monell-type claims arising from unconstitutional enforcement—all in the context of Cannabis Law, which was completely new to Marx. Expecting perfect mastery of the Debtor's business within the short time before the proceeding was dismissed is unreasonable. The law does not require omniscience; it requires reasonable investigation. Marx's conducted extensive investigation, it remains ongoing, and is well within Rule 9011's parameters.

64.     The Landlord Creditors correctly point to inaccuracies in early schedules.  The deficiencies are attributable to the emergency nature of the filing, the immediate need to protect estate assets, and the necessity of coordinating with accountants and multiple entities.

65.     While Marx's quixotic attempt to comply with court deadlines to bring the bankruptcy filings current within weeks of appearing was unsuccessful, his

intent was to move the case forward, not to delay it. Equating deficient filings within weeks of appearing with delay distorts the record. These are routine circumstances in complex commercial Chapter 11 matters. Nothing about them suggests bad faith or frivolous conduct.

## **CONCLUSION**

66.    The Creditors' argument boils down to 1) they believed that the Debtor could not properly file this proceeding and/or the subject leases were not part of the Debtor's Estate, 2) based solely on their beliefs, the automatic stay did not apply, 3) sanctions should be imposed for questioning their reasoning, and 4) therefore, they did not have to move before this court to vacate the stay.

67.    This argument is not supported by the facts or law and, along with the reasons above, should result in the Court denying the Creditors' Motion for Sanctions in its entirety, and consideration of whether this motion was a misuse of the sanctions process.

Dated: November 25, 2025
      Northport, New York

Robert M. Marx, Esq.
1019 Fort Salonga Road, Suite 10-134
Northport, NY 11768
Email:Robertmarx@rmmarxlaw.com
Tel: 917-375-1909